UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20577-CR-KMM

UNITED STATES OF AMERICA

vs.

DAVIE JULIAN RODRIGUEZ,

    Defendant.
_____/

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The United States, by and through the undersigned Assistant United States Attorney, hereby files this response to the Defendant's Motion to Suppress (DE: 18). The Defendant seeks to suppress a Glock 9mm semi-automatic pistol and ammunition that was seized from the vehicle he was driving on August 1, 2014. Because the firearm and the ammunition were secured lawfully, the motion should be denied.

STATEMENT OF RELEVANT FACTS

On August 1, 2014, at approximately 2 p.m., Detective José Lluis of the Miami-Dade Police Department (MDPD) saw a maroon Nissan Maxima, later determined to be driven by the Defendant, run a red light at the intersection of approximately 127th avenue and Coral Way. Detective Lluis is a member of the MDPD Gang Unit for the Midwest District, and on that day, he was patrolling the area as part of a gang and burglary detail. Detective Lluis was driving an unmarked car, and he was wearing plain clothes with a police badge hanging from his neck.

After observing the Nissan maxima run the red light, Detective Lluis proceeded to follow the Defendant for approximately five blocks. As he was following the Defendant, Detective Lluis saw the Defendant driving recklessly. In particular, Detective Lluis saw the defendant:

(1) run a red light at the intersection of 127th Avenue and Coral Way; (2) weave in and out of traffic while failing to use his turn signals; (3) speed past a road construction crew that was working on the corner of an intersection with posted construction signs, endangering their safety; and (4) exceed the speed limit.

Detective Lluis pulled up behind the Defendant, activated his police lights, and blew his police siren to conduct a traffic stop based on the Defendant's reckless driving. The Defendant came to a complete stop in front of Detective Lluis's car. Both vehicles were in a left-turn lane that feeds into a shopping center. Once stopped, Detective Lluis got out of his car and started walking up to the Nissan Maxima. As he was approaching, Detective Lluis saw that the Defendant was not wearing a seat belt. Detective Lluis also saw the Defendant lower the driver's side window and look back towards Detective Lluis. But instead of remaining stopped, the Defendant drove off from Detective Lluis as Detective Lluis remained outside of his police vehicle, approaching the Defendant, and drove into the shopping center.

After the Defendant drove off, Detective Lluis got back into his police car and followed the Defendant into the shopping center. Once inside the shopping center, Detective Lluis saw the Defendant trying to go around other cars. At that point, Detective Lluis pulled up behind the Defendant again and turned on his siren for a second time. His police lights were activated. As before, the Defendant stopped his car, and Detective Lluis began walking up to the Defendant's car. Again, however, instead of remaining stopped in compliance with Detective Lluis's lights, sirens, and approach, the Defendant drove off for a second time away from Detective Lluis, heading towards the exit of the shopping center.

The Defendant continued driving away from Detective Lluis inside the shopping center and eventually exited the shopping center onto 122nd avenue. He did not go far, however,

because by that point, another MDPD gang detective, Detective Gonzalez, had arrived in another unmarked police car. The Defendant thus turned back into the shopping center and continued driving away from the detectives, past several businesses inside the shopping center. Detective Lluis (and now Detective Gonzalez too) continued to follow the Defendant inside the shopping center while still activating their police lights. Eventually, the Defendant entered the drive-through area of a BB&T bank located inside the shopping center, but because there was no exit out of that drive-through area, the Defendant was forced to come to a complete stop.

Detective Lluis and Detective Gonzalez got out of their cars with their weapons drawn and could see the Defendant in the process of exiting the Nissan. Detective Lluis already had determined at that point that he was going to arrest the Defendant for reckless driving. The Defendant was handcuffed and placed on a nearby curb from the Defendant's car. There were no other occupants in the vehicle besides the Defendant.

Prior to the car being towed as part of an inventory search, Detective Lluis reached into the driver side of the car to secure the car and turn off the ignition, because the car remained running in the public parking lot of the bank drive-through. When he did so, Detective Lluis glanced backwards for a brief moment and saw in plain view a black pistol lying on the floorboard behind the passenger seat. The firearm was within reaching distance of the driver's seat. The firearm was loaded, and it was next to a Glock firearm case. It is a Glock 19, 9 mm semi-automatic pistol.

While on the scene, Detective Gonzalez and another MDPD Detective, Detective Munoz, conducted a full inventory search of the vehicle. The inventory search was conducted pursuant to MDPD policy. No other firearms were located.

The Defendant was advised of his *Miranda* rights on the scene by Sergeant Rodriguez. When asked whether he knew to whom the gun belonged, the Defendant said he did not know, and when asked who owned the car, he said it belonged to a relative but declined to say anything more. Agents later determined that (1) the gun was purchased by the Defendant's fiancé; and (2) the vehicle belongs to the Defendant's fiancé but is registered to the fiancé's mother.

The Defendant was arrested for reckless driving and for possessing a firearm having previously been convicted of a felony. He also was issued the following three traffic citations that day—(1) running a red light, in violation of Florida Statute § 316.075(1)(c)(1); (2) reckless driving, in violation of Florida Statute § 316.192(1); and (3) driving without a seat belt, in violation of Florida Statute § 316.614.

## ARGUMENT

### A. Detective Lluis had probable cause to arrest the Defendant for reckless driving and for attempting to elude a police officer.

The Supreme Court has made clear that an arrest does not violate the Fourth Amendment if the officer making the arrest has probable cause to arrest the defendant for any crime. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted). Probable cause, however, is "a standard well short of

4

absolute certainty." *Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 615 (2007).  It requires "more than mere suspicion, but [it] does not require convincing proof." *Rankin*, 133 F.3d at 1435 (internal quotation marks omitted).  "For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances." *United States v. Street*, 472 F.3d 1298, 1305 (11th Cir. 2006) (internal quotation marks and punctuation omitted).  The officer's own subjective opinions or beliefs about probable cause are irrelevant, because it is an objective standard.  *Id.*

In this case, Detective Lluis had probable cause to arrest the Defendant, because the facts and circumstances within Detective Lluis's knowledge would cause a reasonably prudent person under the circumstances to believe that the Defendant had committed two crimes—reckless driving, in violation of Florida Statute § 316.192, and attempting to elude a police officer, in violation of Florida Statute § 316.1935.

Under Florida Statute § 316.192, "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."  Section 901.15(5) authorizes a warrantless misdemeanor arrest for reckless driving if the offense occurred within the officer's presence.[1]

In this case, Detective Lluis personally observed the Defendant commit the offense of reckless driving.  He saw the Defendant run a red light at a busy intersection; weave in and out of traffic without using his turn signals, speed past a road construction crew that was working with

---

[1] Florida Statute § 901.15(5) provides:

> A violation of chapter 316 has been committed in the presence of the officer. Such an arrest may be made immediately or in fresh pursuit. Any law enforcement officer, upon receiving information relayed to him or her from a fellow officer stationed on the ground or in the air that a driver of a vehicle has violated chapter 316, may arrest the driver for violation of those laws when reasonable and proper identification of the vehicle and the violation has been communicated to the arresting officer.

5

posted construction signs, endangering their safety; exceed the speed limit; and, drive off from Detective Lluis—not once, but twice—as Detective Lluis approached the Defendant's car with lights and sirens and tried to pull him over. Based on Detective Lluis's personal observations, there was ample basis for a prudent person to believe that the Defendant was driving with reckless disregard for the safety of others, including the road construction crew, the other drivers in the area, and Detective Lluis himself, who was outside of his vehicle walking up to the defendant's car on two occasions when the Defendant drove off. *See State v. Velez*, 649 So. 2d 310, 310 (Fla. App. 3 Dist. 1995) (finding that a stop of the defendants' vehicle for reckless driving was justified because the "officer[s] saw the car run at least one red light and travel at sixty miles per hour in a thirty-mile-per-hour zone"); *Wood v. Kesler*, 323 F.3d 872, 879 (11th Cir. 2003) (observing, in relation to the Alabama reckless driving statute, that a state trooper had probable cause to charge the defendant with reckless driving for 17 miles over the speed limit in a construction area on a highway). The Defendant's arrest was thus supported by probable cause.

The Defendant's arrest also was supported by probable cause that he committed the offense of attempting to elude a police officer, in violation of Florida Statute § 316.1935(1). That statute provides, in pertinent part:

> It is unlawful for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order or, having stopped in knowing compliance with such order, willfully to flee in an attempt to elude the officer, and a person who violates this subsection commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Florida law does not define the term "flee" or "elude" in Florida Statute § 316.1935(1), but unlike other subjections within that same statute, subsection (1) does not require a high-speed chase or vehicle pursuit to qualify as willful flight or eluding.[2]

Applied here, an objectively reasonable officer, having viewed the Defendant's actions, would have probable cause to believe that the Defendant (1) knew he had been ordered to stop by a duly authorized law enforcement officer and (2) having stopped in knowing compliance with that order, willfully fled in an attempt to elude the officer.  *See* Florida Statute § 316.1935(1).[3]  When Detective Lluis pulled up directly behind the Defendant the first time (after observing him run a red light, weave through traffic without using his turn signals, and speed past a construction crew), Detective Lluis activated his lights and sirens, exited his unmarked car, starting walking up to the Defendant wearing a police badge on the front of his shirt, and saw the Defendant lower his window and look back towards Detective Lluis.  Clearly, Detective Lluis's use of his lights and sirens and his act of approaching the Defendant signaled to the Defendant that he had been ordered to stop.  Moreover, the Defendant himself lowered his car window and looked back at Detective Lluis—thus confirming that he knew he was being stopped.  Despite all of this, the Defendant drove off from the Detective in complete disregard of

---

[2] For example, subsection (3) in Florida Statute 316.1935 sets forth a second-degree felony offense for any person who "willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, … and during the course of the fleeing or attempted eluding: (a) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, …. [or] (b) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, and causes serious bodily injury or death to another person, …." Florida Statute § 316.1935(3)(a)-(b).

[3] It does not matter that Detective Lluis did not arrest the Defendant for willfully fleeing, because an arrest is valid if it is supported by probable cause for any offense, even if it is not the offense for which the defendant was arrested. *See Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004) (holding that an arrest is valid under the Fourth Amendment if it is based on any offense for which police have probable cause, even if that offense is different from, and not closely related to, the offense stated by the police as the reason for the arrest).

the order to stop, fled in an attempt to elude the Detective, and entered the shopping center, only to continue trying to get past cars.

At this point, Detective Lluis was forced to get back into his car and follow the Defendant into the shopping center, eventually pulling up behind the Defendant again.  His police lights remained activated, and he blew his siren again.  As before, Detective Lluis started walking up to the Defendant.  But for a second time, in complete disregard of the order to stop his vehicle, the Defendant drove off and fled again from Detective Lluis—this time toward the exit of the shopping center.  The Defendant even tried to exit the shopping center altogether on 122nd Avenue, but he was unable to leave completely, because another officer had arrived by then—and so he was forced to reenter the center through another entrance.  Even at that point, the Defendant continued to flee and elude the officers, who had their lights activated, driving past several additional businesses until eventually he was blocked by the bank drive through and could not go any farther.

On these facts, an objectively reasonable officer would have probable cause to believe that the Defendant had committed the act of willful fleeing in an attempt to elude an officer, in violation of Florida Statute § 316.1935(1).  The Defendant knew he was being stopped and nonetheless drove off from Detective Lluis on two occasions in an attempt to elude him. *See Jackson v. State*, 463 So.2d 372, 372-73 (Fla. 5th DCA 1985) (finding sufficient evidence of willful fleeing where a patrolling officer approached the defendant standing in the street, but the defendant got into his car instead of stopping and drove off, and then once two other officers followed him in patrol cars with lights flashing, he stopped his car for a moment but then drove off again); *Morales v. State*, 35 So. 3d 122, 124 (Fla. App. 3 Dist. 2010) (finding willful fleeing where the defendant stopped briefly when the officer's emergency lights were activated but then

8

drove away at a high rate of speed going through a red light, continued to flee, and then finally came to a complete stop in a parking lot).  Probable cause does not require absolute certainty that an offense has occurred, *see Rankin*, 133 F.3d at 1435, and in this case, there was ample basis from which a reasonable officer would conclude that the Defendant willfully fled after knowing he was being stopped by an authorized law enforcement officer.[4]

### B. The gun was in plain view.

The requirements for a lawful plain view search are as follows: first, the officer must not have violated the Fourth Amendment "in arriving at the place from which the evidence could be plainly viewed"; second, "the item be in plain view"; and third, the item's "incriminating character must also be immediately apparent. *See Horton v. California*, 496 U.S. 128, 136 (1990).  An object's incriminating character is immediately apparent if the officer has probable cause to believe that an object in plain view is contraband or evidence of a crime without conducting some further search of the object. *See also Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

In this case, as noted, Detective Lluis had probable cause to arrest the Defendant for reckless driving and for willfully fleeing in an attempt to elude law enforcement.  Having made the determination to arrest the Defendant for reckless driving—and there being no Fourth Amendment violation—Detective Lluis entered the car lawfully to turn the ignition off to secure it for towing and also because the car had remained running in the public parking lot of a bank drive-through.  Detective Lluis was in the vehicle lawfully for that purpose. *See United States v.*

---

[4] At a minimum, there was probable cause to arrest the Defendant for committing the lesser-included misdemeanor offense of refusing to comply with a command by a law enforcement officer, in violation of Florida Statute § 316.072.  That statute provides:  "It is unlawful and a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083, for any person willfully to fail or refuse to comply with any lawful order or direction of any law enforcement officer."

9

*Lynch*, 290 F. Supp. 2d 490, 498 (M.D. Pa. 2003) (finding a lawful plain view search where an officer entered a car in a parking lot to turn off the engine and secure it for towing and then saw evidence of a drug crime in plain view in the car).

Once lawfully inside the car, Detective Lluis glanced backwards and saw, in plain view, on the floor behind the passenger seat, the Glock pistol next to a Glock case. The gun was visible immediately to Detective Lluis, and so was its incriminating nature. This is because, under Florida Statute § 790.053, it is a second-degree misdemeanor "for any person to openly carry on or about his or her person any firearm or electric weapon or device" unless he or she is doing so for lawful self-defense. *See* Florida Statute § 790.053.[5] In *Ensor v. State*, 403 So.2d 349 (Fla. 1981), the Florida Supreme Court construed the term "on or about the person" to mean "physically on the person or readily accessible to him." *Id.* at 354. And the term "readily accessible for immediate use" is defined under Florida's weapons law as "a firearm or other weapon [that] is carried on the person or within such close proximity and in such a manner that it

---

[5] Florida Statute § 790.053 governs the "open carrying of weapons" and provides, in pertinent part:

> (1) Except as otherwise provided by law and in subsection (2), it is unlawful for any person to openly carry on or about his or her person any firearm or electric weapon or device. It is not a violation of this section for a person licensed to carry a concealed firearm as provided in s. 790.06(1), and who is lawfully carrying a firearm in a concealed manner, to briefly and openly display the firearm to the ordinary sight of another person, unless the firearm is intentionally displayed in an angry or threatening manner, not in necessary self-defense.
>
> (2) A person may openly carry, for purposes of lawful self-defense:
> (a) A self-defense chemical spray.
> (b) A nonlethal stun gun or dart-firing stun gun or other nonlethal electric weapon or device that is designed solely for defensive purposes.

can be retrieved and used as easily and quickly as if carried on the person." Florida Statute § 790.001(16).[6]

Applying those principles here, the following points are clear: (1) Detective Lluis was lawfully in the car to turn off the car prior to conducting any search; (2) he saw a gun in plain view, within reaching distance of the driver and immediately accessible to him; and (3) the incriminating nature of the gun was apparent without further investigation, because Florida law prohibits the open carrying of weapons in the manner done here (that is, on the floor of a car, not securely encased, immediately visible, and within reaching distance of the driver). Under these circumstances, Detective Lluis (or any officer) was not required to ignore the significance of the gun in plain view. *See, e.g.*, *United States v. Robles*, 37 F.3d 1260, 1264 (7th Cir. 1994) ("While securing a residence, law enforcement authorities are not required to ignore contraband or evidence of a crime if those items are in plain view." (citing *Arizona v. Hicks*, 480 U.S. 321, 326 (1987)); *United States v. Roberts*, 619 F.2d 379, 381 (5th Cir. 1980) ("Police officers are not required to ignore the significance of items in plain view even when the full import of the objects cannot be positively ascertained without some examination"). For this reason, the plain view exception applies to validate the seizure and admissibility of the gun.

Even if the plain view exception does not apply, the firearm and ammunition are admissible under the inevitable-discovery exception to the exclusionary rule. *See Nix v. Williams*, 467 U.S. 431, 444 (1984) (describing the "inevitable discovery" exception). This is because they would have been found by the police during their subsequent inventory search of the vehicle—and indeed, as described below, were found in that manner. *See United States v.*

---

[6] By contrast, it is not illegal under Florida law to keep an authorized gun "securely encased," meaning in a glove compartment, snapped in a holster, in a gun case, in a zippered gun case, or in a closed box or container which requires a lid to be opened for access. *See* Florida Statute § 790.001(17).

11

*Ethingor*, 388 F. App'x 858, 869 (11th Cir. 2010) (finding that, even though there was no basis to search the defendant's car incident to arrest for eluding an officer, the inevitable-discovery exception applied—meaning that the gun would have been found by the police during their subsequent inventory search of the vehicle).

### C. Alternatively, the search of the vehicle was a valid inventory search.

Alternatively, the search and seizure of the gun was justified as part of a lawful inventory search of the car conducted pursuant to standard department policy. "To show that an inventory search is lawful, the government must establish, first, that the officers had the authority to impound the defendant's vehicle, and second, that the officers complied with departmental policy in conducting the search." *United States v. Kalu*, 485 F. App'x 366, 369 (11th Cir. 2012) (unpublished).

Miami-Dade Police Department protocols dictate that an officer has authority to tow a vehicle following arrest. *See* Attachment A, Pg. 38 (Section 6, I.F.1). The vehicle may be released to a person, designated by the driver, who possesses a valid driver's license and who may take possession and move the vehicle. *See* Attachment A, Pg. 38 (Section 6, I.F.1.a). If the vehicle is not released, it shall be towed to a storage facility. *See* Attachment A, Pg. 38 (Section 6, I.F.1). Prior to towing a vehicle, the officer must conduct an inventory and prepare a written record of all personal property found in the vehicle. *See* Attachment A, Pg. 38 (Section 6.I.C.1). As the policy indicates, mishandling of towed or impounded vehicles may result in civil liability for the County and the department employee concerned. *See* Attachment A, Pg. 38 (Section 6.I.E.1).

In this case, as noted above, Detective Lluis had probable cause to arrest the Defendant for reckless driving and for willfully fleeing in an attempt to elude law enforcement. He thus had

discretion to tow the vehicle to a storage facility. Prior to having the vehicle towed, the department was required to conduct an inventory of all of the personal property found in the vehicle. Had the Defendant been willing to designate an authorized person to pick up the car, then perhaps the vehicle could have been released to such person. But here, the inventory search was particularly necessary, because the Defendant conspicuously refused to say who owned the car or to provide any further information about the car's owner. The car thus was towed and inventoried lawfully, and as required, officers prepared an inventory sheet itemizing the personal property found in the car. One of the items located and seized was the loaded Glock 19 semi-automatic pistol. Accordingly, the search and seizure of the gun was part of a lawful inventory search conducted pursuant to department policy.

## CONCLUSION

The Defendant's Motion to Suppress should be denied. Officers had probable cause to arrest the Defendant. The gun was observed in plain view. And the search was a lawful inventory search.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: */s/ Aileen M. Cannon*
Aileen M. Cannon
Assistant United States Attorney
Fla. Bar No. 0101484
99 Northeast 4th Street
Miami, Florida 33132-2111
Aileen.cannon@usdoj.gov
Tel: (305) 961-9002
Fax: (305) 530-7976

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that on October 14, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                     */s/ Aileen M. Cannon*
                     Aileen M. Cannon